UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD MCKINLEY,<br><br>Plaintiff,<br><br>v.<br><br>DAVID GOMEZ, ROB JEFFREYS,<br>LUSECITA GALINDO, MARLENE HENZE,<br>and WEXFORD HEALTH SOURCES, INC.,<br><br>Defendants. | No. 22 CV 5459<br><br>Judge Manish S. Shah |

## ORDER

Defendant Wexford Health Sources's motion to dismiss, [70], is granted. Plaintiff's claim against defendant Wexford is time-barred. Defendant Rob Jeffreys's motion to dismiss, [77], is granted. Plaintiff fails to state a claim for individual liability under 42 U.S.C. § 1983 against defendant Jeffreys. The parties shall file a joint status report with a proposal for completing any remaining discovery (including expert discovery) by September 10, 2024.

## STATEMENT

Plaintiff Bernard McKinley[1] contracted COVID-19 while in the custody of the Illinois Department of Corrections at the Stateville Correctional Center. [62] ¶¶ 9–12.[2] On January 4, 2022, IDOC medical staff tested McKinley and his cellmate for COVID-19. *Id.* ¶ 16. Staff did not disclose the results of the tests to McKinley or his cellmate. *Id.* Four days later, staff tested McKinley again for COVID-19. *Id.* ¶ 17. They informed McKinley that his cellmate had tested positive on January 4th. *Id.* The same day, McKinley filed an emergency grievance with Stateville's warden, David Gomez, stating that Gomez, IDOC Director Rob Jeffreys, and Stateville health care staff had created an unsafe prison environment by forcing inmates to share social spaces with those who tested positive for COVID-19. *Id.* ¶ 18. Warden Gomez

---

[1] Plaintiff's first name is also spelled "Benard" in the amended complaint and briefs. I use the spelling of plaintiff's name as he filed it in his original complaint, [1].

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended complaint, [62].

responded to McKinley's emergency grievance two weeks later stating that the grievance did not constitute an emergency. *Id.* ¶ 26.

McKinley developed symptoms of COVID-19. [62] ¶ 21. On January 18, Dr. Marlene Henze (site medical director and Wexford employee) told McKinley that he had tested positive on January 8 and that he was being taken off quarantine status. *Id.* ¶ 23. This was the first time McKinley learned that he had tested positive for COVID-19. *Id.* McKinley, who has asthma, continues to experience "Long COVID" symptoms including anxiety, severe headaches, difficulty breathing, high blood pressure, and chest pains. *Id.* ¶ 35.

McKinley brings suit under 42 U.S.C. § 1983 against Warden Gomez, Dr. Henze, and Lusecita Galindo (health care unit administrator and IDOC employee) alleging that they knew and disregarded the substantial risk of serious harm posed by COVID-19 to McKinley in violation of the Eighth Amendment. [62] ¶ 42. He brings a claim against Wexford Health Sources alleging that Wexford failed to adequately train and supervise its staff and permitted the widespread practice of forcing COVID-positive inmates to share spaces with those who tested negative. *Id.* ¶¶ 45–50. He also brings a § 1983 claim against Jeffreys and Gomez in their individual capacities for failure to isolate COVID-positive inmates. *Id.* ¶¶ 51–55. Defendants Wexford and Jeffreys move to dismiss the amended complaint. [70], [77]. For the reasons discussed below, the motions are granted.

## I. Legal Standard

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

## II. Wexford's Motion to Dismiss

Wexford argues that McKinley's amended complaint impermissibly relies on group pleading. [71] at 6–7. While McKinley sometimes refers to defendants collectively, *see* [62] ¶¶ 12, 15, 27, 34, he adequately alleges Wexford's role in the conduct. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."). He states that Wexford, as IDOC's private contractor to provide medical services, helped develop and implement IDOC's COVID-19 response. [62] ¶¶ 8, 30. He alleges that he contracted COVID as a result of the policies and practices of IDOC, Stateville, and Wexford; specifically, "defendants' policy of forcing people who contracted COVID-19

2

to remain in the same cells with people who had not yet contracted the virus." *Id.* ¶ 27. McKinley's complaint is sufficient to put Wexford on notice of its role in the alleged wrongful conduct.

Wexford asserts (and McKinley does not dispute) that the limitations period for the claim against Wexford began to run on January 18, 2022—the date McKinley learned he had tested positive for COVID-19 after being forced to share a cell with his COVID-positive cellmate. [71] at 14–15; [62] ¶ 23; *see Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 822 (7th Cir. 2022) ("Accrual of a § 1983 claim—a matter governed by federal law—occurs 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'") (citation omitted). State law provides the applicable statute of limitations and tolling rules for § 1983 actions. *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). In Illinois, the statute of limitations for personal-injury actions is two years. *See* 735 ILCS 5/13-202. So, McKinley should have filed his claim against Wexford by January 18, 2024. He did not name Wexford as a defendant until April 4, 2024. [62]. But he says that the amended complaint naming Wexford relates back to his original complaint, which was timely filed on October 5, 2022. [1]. He admits that he did not explicitly name Wexford as a defendant in his original complaint, but he named Dr. Henze (a Wexford employee), and his oversight is attributable to his initial pro se status.[3] [80] at 4–6.

Under Fed. R. Civ. P. 15(c)(1)(C), an amendment to a pleading that names a new party relates back to the date of the original pleading if "(1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint; (2) 'within the period provided by Rule 4(m),' the party added by amendment 'received such notice of the action that it will not be prejudiced in defending on the merits'; and (3) the added party 'knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.'" *Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021) (emphasis in original). The focus of Rule 15(c)(1)(C)(ii) is on "what the prospective *defendant* knew or should have known" rather than the plaintiff's knowledge. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010) (emphasis in original). "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552.

There is no mistake here. McKinley's original complaint made no reference to Wexford (or even a general reference to Dr. Henze's employer). *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 559 (7th Cir. 1996) (noting that courts may construe pro se complaints as "having named defendants who are only mentioned in the body of the complaint"). This also wasn't the type of legal mistake where McKinley named a state agency entitled to sovereign immunity rather than individual defendants who

---

[3] McKinley filed his amended complaint represented by counsel. *See* [62].

are the appropriate parties in a § 1983 suit. *Id.* at 557. McKinley says that Wexford should have been on notice that he was challenging not only Dr. Henze's actions as an employee but Wexford's policies and practices as her employer. [80] at 5. But private corporations sued under § 1983 are not liable under the doctrine of respondeat superior. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789–96 (7th Cir. 2014). And there was nothing in the original complaint to suggest a theory of *Monell* liability against Wexford based on its unconstitutional policy or practice. Wexford asserts that it would be prejudiced by defending this claim on the merits given the date of the original filing in October 2022 and the progress of discovery. [82] at 13–14; *see Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) ("[T]he longer the delay in amending the complaint was, the likelier the new defendant is to have been placed at a disadvantage in the litigation."). I agree. Because there was no mistake that satisfies the requirements of Rule 15(c)(1)(C)(ii), and Wexford would be prejudiced by joining the case at this stage, relation back is inapplicable and the claim against Wexford is dismissed as untimely.

Equitable tolling "pauses the running of… a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Xanthopoulos v. United States Dep't of Lab.*, 991 F.3d 823, 831 (7th Cir. 2021) (internal quotation marks omitted). The doctrine may apply in cases where a pro se plaintiff cannot identify unknown defendants and is reasonably diligent in filing a motion to seek out that information. *See Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014). Wexford points out that if McKinley did not know Wexford's identity when he filed his original complaint, he at least knew about Wexford's identity as Dr. Henze's employer several weeks before the limitations period ended. *See* [82] at 10. Based on initial discovery exchanges, McKinley (still pro se at the time) requested leave to file an amended complaint on December 6, 2023 to add agents of the Illinois Department of Public Health and Office of Health Services as additional defendants. [49]. McKinley did not seek to amend to add Wexford as a defendant then. This was not an exceptional circumstance where McKinley did not know Wexford's identity and asked for additional time from the court to seek it out. Equitable tolling does not save McKinley's untimely claim.

### III. Jeffreys's Motion to Dismiss

State officials may be sued in their individual capacity under § 1983 for actions "taken under color of state law." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). To establish personal liability, McKinley must show that Jeffreys "caused the constitutional deprivation at issue" or "acquiesced in some demonstrable way in the alleged constitutional violation." *Id.* (quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). Jeffreys cannot be held liable under § 1983 unless he had some "personal involvement in the alleged constitutional deprivation." *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). For a supervisor to be liable for the conduct of others, he must both "(1)

4

know about the conduct and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez*, 40 F.4th at 828 (quoting *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022)) (internal quotation marks omitted). "Under the second prong, a supervisor is liable if he acted purposefully, knowingly, or recklessly, but *not* negligently." *Id.* (emphasis in original).

McKinley alleges that Jeffreys knowingly permitted the implementation of an unconstitutional policy—forcing COVID-positive and negative inmates to share spaces—which caused McKinley to contract COVID-19. [81] at 4. He further alleges that Jeffreys should have known that this policy conflicted with professional medical standards and placed people like McKinley at a serious risk of harm. *Id.* He says that Jeffreys knew or should have known about his asthma because of his emergency grievance. *Id.*

Jeffreys contends that he never "personally interacted" with McKinley nor "personally inflicted harm on him." [78] at 4. McKinley need not establish that Jeffreys directly participated in the conduct that caused harm. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017). But McKinley must at minimum allege that Jeffreys knew that medical staff were forcing inmates like McKinley to share cells with COVID-positive inmates and that McKinley was at risk of this harm. The only allegation that supports supervisory knowledge is McKinley's emergency grievance. An inmate's correspondence to a prison official can establish that the official had the requisite knowledge of a constitutional deprivation and provide a basis for personal liability. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015). But McKinley states that the emergency grievance was addressed to and resolved by Warden Gomez, not Director Jeffreys. [62] ¶¶ 18, 26; *see* Ill. Admin. Code tit. 20, § 504.840 (emergency grievance procedure). This establishes Gomez's knowledge, but not Jeffreys's.

McKinley cites to *Childress v. Walker*, 787 F.3d 433 (7th Cir. 2015), to support the proposition that a prison administrator may be personally liable for a policy that violated a prisoner's Eighth Amendment rights despite never participating in the actual conduct. [81] at 4–5. In *Childress*, the plaintiff alleged that the prison administrator knew about the conditions of his mandatory release that included a ban on computer-related material but nevertheless permitted a practice that placed a disk into prisoners' possessions and jeopardized his MSR. *Childress*, 787 F.3d at 440. The court found the claim plausible because plaintiff alleged (1) that prison administrators knew of the regular practice of placing computer disks with inmates' property and (2) knew that the practice "put at least some recently released prisoners in jeopardy of losing their freedom, but nevertheless did not alter, change, or otherwise intervene to prevent the harm."*Id.* There, the warden had admitted knowing of two other inmates who had been re-incarcerated because of the prison's practice. *Id.* Here, the plausible allegation of knowledge is missing. Without any record of notice (the grievance addressed by Warden Gomez is not enough), there was no practice or conduct affecting McKinley that Jeffreys was made aware of and

5

nevertheless "turned a blind eye to." Because McKinley fails to allege that Jeffreys was personally involved in the policy or practice that caused him to contract COVID-19, the claim is dismissed.

Defendant Wexford Health Sources's motion to dismiss, [70], is granted. Defendant Rob Jeffreys's motion to dismiss, [77], is granted. Both dismissals are with prejudice.[4]

ENTER:

Date: August 26, 2024

Manish S. Shah
U.S. District Judge

---

[4] Dismissal with prejudice of the claim against Wexford is appropriate because no amendment would cure untimeliness. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Dismissal of prejudice of the claim against Jeffreys is appropriate because even if McKinley could amend to include an allegation of Jeffreys's knowledge, he would otherwise be entitled to qualified immunity. *See Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) (claims barred by the doctrine of qualified immunity must be dismissed with prejudice). McKinley's complaint fails to allege a violation of a constitutional right clearly established at the time. *See Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023). McKinley says it is clearly established that prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). But the right cannot be defined at "too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021). McKinley does not identify any precedent that establishes "beyond debate" that a prison administrator's failure to isolate inmates during the COVID-19 pandemic constitutes a violation of the Eighth Amendment. *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011); *see also Ball v. Plasse*, No. 221CV00062JMSMJD, 2023 WL 1766000, at *4 (S.D. Ind. Feb. 3, 2023), *appeal dismissed*, No. 23-1432, 2023 WL 5674590 (7th Cir. Apr. 6, 2023) (collecting cases and observing that "many courts have granted qualified immunity to jail and prison administrators given the evolving nature of the virus and the related recommendations for keeping incarcerated individuals safe").